# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| 210 LUDLOW STREET CORP., ) | |
| ) | Case No. 10-11850-TPA |
| Debtor. ) | |
| ) | Chapter 11 |
| ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ) | |
| ) | |
| 210 LUDLOW STREET CORP., ) | |
| ) | |
| Movant. ) | |
| v. ) | Doc#____ |
| ) | |
| WELLS FARGO BANK, N.A., AS ) | |
| TRUSTEE FOR MORGAN STANLEY ) | |
| CAPITAL I INC., COMMERCIAL, ) | |
| MORTGAGE PASS-THROUGH ) | |
| CERTIFICATES, SERIES 2007-HQ11 ) | |
| c/o C-III Asset Management LLC ) | |
| 5221 N O'Connor Boulevard, Suite 600 ) | |
| Irving, TX 75039, ) | |
| | |
| Respondent. | |

## EMERGENCY MOTION FOR ORDER
## AUTHORIZING USE OF CASH COLLATERAL

210 Ludlow Street Corp., the debtor and debtor-in-possession (the "Debtor"), hereby files this Emergency Motion for Order Authorizing Use of Cash Collateral (the "Motion") and in support of this Motion, the Debtor respectfully represents as follows:

### CERTIFICATE OF NECESSITY

THE UNDERSIGNED HEREBY CERTIFIES that as a member of the Bar of this Court, I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not

interposed for any improper purpose, such as to harass, or to increase the cost of litigation, and there is just cause to request a consideration of the matter on an emergency basis. I am aware of Federal Rule Civ. Pro. 11 and Bankruptcy Rule 9011 and of the consequences which may result from violations thereof.

    THE UNDERSIGNED CERTIFIES FURTHER that this matter is an emergency because the Debtor needs the use of cash collateral to operate its business going forward.

    THE UNDERSIGNED CERTIFIES FURTHER that the necessity of this emergency hearing has not been caused by any lack of due diligence on my part, but has been brought about only by circumstances beyond my control or that of my client.

    THE UNDERSIGNED CERTIFIES FURTHER that the amount of time needed to present information sufficient under applicable law to enable this Court to enter an order granting the requested relief is fifteen minutes.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §1408 and 1409.

## BACKGROUND

2.     On October 8, 2010 (the "Petition Date"), the Debtor commenced its case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

3.     Warren Motel Associates is the owner of real property located at 210 Ludlow Street, Warren, Pennsylvania.

4.     210 Ludlow Street Corp. operates a full service 110 Room Holiday Inn at the property owned by Warren Motel Associates ("Warren Holiday Inn").

5.     The Warren Holiday Inn was constructed in 1979.

2

## THE SECURITIZED MORTGAGE

6. On November 20, 2006, the Debtors obtained a loan from the LaSalle Bank National Association in the original principal amount of $5,100,000.00 secured by, *inter alia*, a mortgage on the property located at 210 Ludlow Street, Warren, Warren County, Pennsylvania.

7. On or about February 19, 2008, the mortgage was assigned, effective as of February 28, 2007, to Wells Fargo Bank as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass Through Certificates, Series 2007-HQ11 ("Securitized Lender").

8. From its inception through 2009 the Warren Holiday Inn was a profitable operation and was able to pay debt service to the Securitized Lender.

## THE HAMPTON INN

9. Commencing in or around 2003, State and Local government officials in the Warren area began exploring the possibility of constructing a 22,000 square foot convention center in downtown Warren, Pennsylvania.

10. To the extent a convention center was built in Warren, the Warren Holiday Inn could not provide sufficient rooms to house visitors who would attend conventions at the 22,000 square foot convention center.

11. As a result of the potential for the building of a convention center, parties outside of the Warren area began exploring the possibility of building another hotel in the Warren, Pennsylvania area.

12. When ownership of the Warren Holiday Inn received information that a third party was exploring the possibility of obtaining a Hampton Inn franchise and building a Hampton Inn in the Warren, Pennsylvania area, ownership determined that the only way to

preclude a loss of market share was to obtain the Hampton Inn franchise for the Warren, Pennsylvania area and build the hotel themselves.

13. The Warren Hampton Inn opened on April 22, 2009.

## THE WARREN PENNSYLVANIA HOTEL MARKET

14. Traditionally, the Warren, Pennsylvania hotel market consisted of approximately 30,000 overnight room stays per year. Of these 30,000 room nights approximately 27,000 were provided by the Warren Holiday Inn, and the remainder being serviced by a Super 8 Motel in Warren, Pennsylvania.

15. For decades the Warren hotel market has remained static because the need for hotel rooms has remained static.

16. Absent the construction of the convention center or other extraordinary event the prospect of an increased need for hotel rooms in the Warren area is remote.

17. To date, the building of a convention center in Warren has not moved past the planning phase.

## EVENTS LEADING TO CHAPTER 11 FILING

18. Nationally, since the financial melt down which occurred in the fall of 2008, hotel occupancy rates have tumbled to lows not seen since the Great Depression. This slow down has impacted the Warren Holiday Inn as well as most other hotels.

19. Immediately upon the opening of the Hampton Inn, the Warren Holiday Inn began experiencing additional reductions in its room occupancy rates.

20. Revenues at the Warren Holiday Inn decreased from approximately $2,500,000.00 in 2008 to $2,000,000.00 in 2009, and will be significantly less in 2010.

21. The significant reduction in room occupancy rates occasioned by the opening of the Hampton Inn coupled with the severe economic downturn rendered the Warren Holiday Inn incapable of servicing its debt to the Securitized Lender.

22. On August 18, 2010, the Securitized Lender commenced an action in Mortgage Foreclosure against the Debtors in the United States District Court for the Western District of Pennsylvania.

23. In order to prevent the loss of the Warren Holiday Inn, and to preclude the possibility of the appointment of a receiver, the Debtors filed their Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code.

## **CASH COLLATERAL**

24. Bankruptcy Code §363(c)(2) provides that the Debtor may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2).

25. In order to continue in business it is necessary that the Debtor use the proceeds from the sale of goods and services at its hotel.

26. Proceeds from the sale of goods and services constitute cash collateral under Section 363 of the Bankruptcy Code.

27. Adequate protection is a concept designed to compensate a secured creditor's interest in the Debtor's property. See 11 U.S.C. §361.

28. A secured party's interest in property of a debtor is limited to the value of the property pursuant to § 506(a)(1) of the Bankruptcy Code.

29. Pursuant to Bankruptcy Code § 362(d)(3)(B)(ii), with respect to the stay of acts against single asset real estate, debtors may provide adequate protection to parties secured by such single asset real estate by paying an amount equal to interest at the then applicable non-default contract rate of interest on the value of the creditor's interest in the real estate. 11 U.S.C. § 362(d)(3)(B)(ii).

30. In the present case, the Mortgaged Premises have an appraised value of $1,179,000 based on the Appraisal dated August 24, 2010 attached hereto and incorporated herein as **Exhibit "A"**.

31. The contractual non-default rate of interest on the obligations secured by the mortgage on the property located at 210 Ludlow Street is 6.1% per annum. Based on the contractual non-default rate of 6.1%, the Securitized Lender is entitled to a monthly adequate protection payment of $5,993.25.

32. The Debtor is willing to begin making immediate monthly payments of $5,993.25 to the Securitized Lender.

33. Based on the provisions of Section 362(d)(3) and 506(a)(1) of the Bankruptcy Code, the Debtor contends that such monthly payment constitutes adequate protection of the Securitized Lender's Interest in the Mortgaged Premises, and that no further adequate protection is required.

## CONCLUSION

34. Based on the foregoing, the Debtor is entitled to use of cash collateral as defined by Section 363 of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that this Honorable Court enter an Order authorizing its use of cash collateral upon the terms and conditions as set forth in the attached Order.

> Respectfully submitted,
>
> **BLUMLING & GUSKY, LLP**
>
> By:   */s/ Haig M. Sakoian*
> Michael Kaminski, Esquire
> PA I.D. #53493
> Haig M. Sakoian, Esquire
> PA I.D. #206032
> 1200 Koppers Building
> 436 7th Avenue
> Pittsburgh, PA  15219
> (412) 227-2500
> mkaminski@blumlinggusky.com
> hsakoian@blumlinggusky.com
>
> **PROPOSED ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**